UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 14-22313-MC-LENARD/GOODMAN

BEL TRADING & CONSULTING, LTD.,

    Plaintiff,

v.

KNM WORLDWIDE SERVICES, LLC,

    Defendant.
_____/

## ORDER DENYING THIRD-PARTY'S MOTION TO QUASH SUBPOENA

Non-party RM Equipment, Inc. ("RM"), a licensed manufacturer of grenade launchers and other firearms, has filed a motion to quash a subpoena served by the judgment creditor in this litigation, who is seeking to collect on its $4.35 million judgment. RM has incurred thousands of dollars of legal fees litigating its challenge to producing 5 or 6 documents which are not subject to the attorney-client privilege, not subject to the work-product exception, not covered by an express trade secrets claim, and not subject to any other protection. At bottom, RM objects to producing four checks and an agreement which canceled a contract to sell grenade launchers to the judgment debtor and argues that the subpoena is improper. The judgment creditor, Bel Trading & Consulting, Ltd. ("Bel"), contends that it is not abusing the post-judgment discovery process and notes that RM's energetic, aggressive, and expensive battle is itself highly suspicious and suggests that RM is hiding something.

Without opining on whether RM's comprehensive, strident attack on a subpoena now encompassing only a few non-privileged documents is somehow indicative of questionable behavior, the Undersigned **denies** the motion.

I.   **BACKGROUND**

The District Court referred to the Undersigned RM's motion to quash Bel's subpoena. [ECF Nos. 1; 7]. The Undersigned has considered the motion, Bel's response in opposition [ECF No. 5], RM's reply [ECF No. 6], Bel's sur-reply [ECF No. 10-1], and the pertinent portions of the record. The Undersigned also held a lengthy hearing on the motion. [ECF No. 17].

Bel entered into an agreement with KNM Worldwide Services, LLC ("KNM") to purchase grenade launchers and other weapons. [ECF No. 1-2, pp. 11-17]. Bel agreed to pay KNM $6,600,000 for these weapons. [ECF No. 1-5, p. 2]. Bel ended up paying KNM $3,636,000 before the contract unraveled. [*Id.* at pp. 3-5]. For its part, KNM entered into an agreement with RM to manufacture the grenade launchers for the ultimate sale to Bel. [ECF No. 1, p. 2]. KNM, however, never received the appropriate licenses to take possession of the grenade launchers. [*Id.*]. Thus, according to RM, legal title to, and possession of, the grenade launchers never transferred to KNM. Nevertheless, in 2011, RM and KNM entered into a cancellation agreement (the "Cancellation Agreement"), pursuant to which RM paid KNM a certain sum to relinquish whatever rights KNM had in the grenade launchers. [*Id.* at pp. 2-3].

When Bel did not receive its grenade launchers or a return of its money, it sued KNM and ultimately obtained a final default judgment. [ECF No. 1-7, p. 2]. KNM is now defunct and appears to be the target of a federal investigation.

**II.     DISCUSSION**

In its post-judgment discovery, Bel served an expansive subpoena on RM. [ECF No. 5-14, pp. 3-12]. RM objected and filed the instant motion to quash. [ECF No. 1]. RM argues that Bel's subpoena should be quashed for the following reasons: (1) it is overbroad and creates an undue burden on RM; (2) the information Bel seeks is beyond the scope of discovery provided under Federal Rule of Civil Procedure 69; and (3) Bel should be required to first seek the information from KNM. [ECF No. 1, pp. 5-9].

   **A. <u>Overbroad and Undue Burden</u>**

After RM filed its motion, the parties conferred and Bel agreed to eliminate 10 of its 12 request and to narrow its subpoena to the following:

   1.   A copy of the Cancellation Agreement; and

   2.   All documents, including all non-privileged communications, reflecting, evidencing or relating to any transfer of funds between KNM (or its principals Christopher Brown and Gabrielle Brown) and RM from April 1, 2008 to the present relating to the Grenade Launchers or Rifles manufactured by RM for KNM.

[ECF No. 5, p. 5]. Before oral argument (where RM was represented by two attorneys),[1] the second category of requested documents was **further narrowed** to include only the checks for payments between RM and KNM. With that further narrowing of Bel's subpoena, the total number of RM documents at issue is approximately 5 to 6 documents -- all of which RM has located and are in its counsel's possession. As such, RM conceded that its overbroad and undue burden argument was no longer viable.

### B. Rule 69

Rule 69(a) states in pertinent part:

> **(2) *Obtaining Discovery.*** In aid of the judgment or execution, the judgment creditor . . . may obtain discovery from *any* person--including the judgment debtor--as provided in these rules or by the procedure of the state where the court is located.

(emphasis added). "Under this Rule, discovery may be had of the judgment debtor or third persons without separate suit and, if discovery is pursued under the federal rules . . . all the discovery devices of the Rules may be used as in the progress of the action." *Caisson Corp. v. Cnty. W. Bldg. Corp.,* 62 F.R.D. 331, 334 (E.D. Pa. 1974).

Rule 69 allows for broad discovery against the judgment debtor. 12 Wright & Miller, Federal Practice and Procedure § 3014 (2d ed. 2013). However, without a particularized showing of necessity and relevance, courts typically limit the examination of third-parties to the judgment debtor's assets and third-parties are

---

[1] RM's counsel appeared in person, while Bel's two attorneys appeared by phone. The hearing lasted approximately two and a half hours.

4

generally not required to disclose their own assets. *Id.; Trustees of N. Florida Operating Eng'rs Health & Welfare Fund v. Lane Crane Serv., Inc.*, 148 F.R.D. 662, 663-64 (M.D. Fla. 1993).

Here, Bel's subpoena, as narrowed, does not seek information regarding *RM's* assets. All that Bel seeks is limited information regarding what happened with KNM's deal with RM for the grenade launchers. In particular, Bel points out that it has evidence that KNM paid RM approximately $360,000 for Bel's grenade launchers but it has no evidence that KNM ever received the grenade launchers or any money back after KNM could not take possession of the grenade launchers. [ECF No. 10-1]. Thus, Bel posits that if KNM gave RM $360,000 but received nothing in return, then KNM could seek the return of that money or the grenade launchers from RM. In other words, Bel's theory is that the right to proceed against some or all of the money is a KNM asset -- and, like any other non-exempt asset, is subject to execution by a judgment creditor.

RM strenuously objects to the production of these 5 to 6 documents. It argues that the Cancellation Agreement was an arms-length transaction and that it paid KNM two checks pursuant to the Cancellation Agreement. The crux of RM's argument is that the discovery sought is beyond the scope of Rule 69 and is nothing more than an attempt to gin-up a *possible* claim against RM, so that Bel can collect on its judgment. According to RM, it is trying to "nip this in the bud" by not producing this discovery. As a result, while RM contends that it did nothing wrong and that the Cancellation

5

Agreement and the supporting checks fully support its position, RM still objects to producing these 5 or 6 documents and further objects to Bel's suggestion that RM produce these few documents to the Undersigned for *in camera* review.[2] RM's counsel argued that *in camera* review would still be an incorrect procedure because it flows from a so-called abuse of a Rule 69 subpoena.

RM's counsel advised the Undersigned that he is personally familiar with the Cancellation Agreement because he participated in its negotiation. Nevertheless, he said he did not know whether the agreement was a trade secret. He conceded that the checks are not trade secrets, however.

Bel's discovery requests have been culled down to only the Cancellation Agreement and the related checks. **No information regarding RM's financial assets is being requested**. Under these modifications, the discovery Bel seeks is within the scope of Rule 69. *See Lane Crane Serv.*, 148 F.R.D. at 663 (noting that "Movants appear to concede, **as they must**, that under Rule 69(a) . . . two requests which seek invoices or

---

[2]     There was another way that RM could have "nipped this in the bud": RM could have produced the 5 to 6 documents that purportedly show that it did nothing wrong or that KNM does not have any right to recover some or all of the money.

RM's argument -- that the subpoena is designed to seek a deep pocket to collect on a judgment from an asset-free judgment debtor -- is entirely speculative. Moreover, even if correct, the RM theory would not prevent RM from obtaining relief in the event that Bel abused process, engaged in malicious prosecution, persuaded the U.S. Marshal to execute on assets not subject to collection efforts, or otherwise engaged in misconduct. Perhaps Bel may also want to evaluate the limited discovery to analyze a potential claim against RM, but it has articulated a sufficiently logical basis to permit the modest amount of document discovery called for by the narrowed subpoena.

6

bills of sale documenting equipment transactions between the Defendant, who is the judgment debtor, and Movant" are proper) (emphasis added).

RM's reliance on *Trustees of Amalgamated Ins. Fund v. Jordan Mfg. Corp.*, No. 07-21301-MC, 2008 WL 343132 (S.D. Fla. Feb. 5, 2008) is misplaced. There, the plaintiff was seeking Rule 69 discovery from a third-party for that *third-party's personal finances* to support a possible alter ego claim. *Id.* at *1. As noted, that is not the case here.

Moreover, while Bel could not without further research precisely articulate a plausible legal theory of how it could pursue a claim against RM if KNM indeed paid $360,000 for the grenade launchers but received nothing in return, there are some legal bases to support such a theory. *Lane Crane Serv., Inc.*, 148 F.R.D. at 664 (discussing Florida post-judgment proceedings and finding that "[p]laintiffs may seek to obtain discovery from Movants pursuant to either Rule 69(a), FRCP, or Rule 1.560, Florida Rules of Civil Procedure, to determine whether they hold property belonging to Defendant. Subsequently, they may move to implead Movants, if appropriate.").

Finally, the Undersigned rejects RM's *ore tenus* argument that because the Cancellation Agreement has a confidentiality provision it is a trade secret or not subject to production. *See, e.g., In re Denture Cream Prods. Liab. Litig.*, No. 09-2051-MD, 2013 WL 214672, at *4 (S.D. Fla. Jan. 18, 2013) ("the mere fact that a Party designates a document as either 'confidential', . . . or as containing 'trade secrets' . . . does not, in and of itself, mean that those documents are, in fact, confidential"); *Gutter v. E.I. DuPont de Nemours*

*& Co.*, No. 95-2152-CIV, 2001 WL 36086590, at *1 (S.D. Fla. Jan. 31, 2001) (confidentiality provisions in settlement agreements cannot be used as a shield to obstruct the discovery process).

The Undersigned, however, also recognizes that a litigant does not necessarily have "an unrestrained right to disseminate information that has been obtained through" discovery. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 31 (1984). Therefore, the discovery RM provides will be provided on an "attorney's eyes only" basis, with Bel's counsel (including associates, assistants, paralegals, law clerks, and investigators working for counsel) being the only persons who can, without further court order, see the documents. The Undersigned notes that RM and Bel are not competitors and that RM did not itself request the "attorney's eyes only" limitation. Nevertheless, in an abundance of caution, the Undersigned is providing this additional protection for RM's limited production.

### C. Getting the Information From Other Sources First

RM argues that Bel should have to seek this discovery first from KNM before seeking it from Bel. Bel, however, did first seek this information from KNM in the underlying litigation in the Middle District of Florida. But that proved unsuccessful because KNM quickly defaulted and is now defunct and under federal investigation. RM's argument at the hearing that Bel must *first* seek discovery from KNM's former counsel or KNM's principals is unpersuasive. KNM's principals and former counsel are,

like RM, third parties. RM has cited to no legal authority which requires Bel to first seek discovery from other third parties before pursuing it from RM.

### III. CONCLUSION

For the foregoing reasons, RM's motion to quash is denied. RM shall respond to Bel's subpoena, as modified in this Order, by August 13, 2014. The Undersigned declines to award any party attorney's fees under Rule 37. The Undersigned finds that both parties' discovery positions were substantially justified. *See* Fed. R. Civ. P. 37(a)(5)(A)(ii).

**DONE AND ORDERED** in Chambers, in Miami, Florida, August 6, 2014.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to**:
Honorable Joan A. Lenard
All Counsel of Record